FILED
2026 Feb-25  PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MARIA ESTELA TETLA MARTINEZ, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 7:26-cv-145-AMM-HNJ |
| JORDAN POWELL, Sheriff, Pickens County Detention Center; *et al.*, | ) ) ) ) ) | |
| Respondents. | ) | |

## ORDER

This case is before the court on an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction. Doc. 2. For the reasons explained below, the motion is **DENIED**.

### I.    BACKGROUND

The facts of this case, based upon information provided in the petitioner's submissions and representations to this court, are follows:

Petitioner Maria Estela Tetla Martinez is a citizen of Mexico who has been living in the United States since approximately 2002. Doc. 2 at 3; Doc. 2-4. In October 2025, Ms. Martinez was arrested in connection with a domestic violence incident. Doc. 2-3 at 33. The "criminal case was fully dismissed on January 26, 2026." *Id.* at 3. Ms. Martinez was then transferred into the custody of United States

Immigration & Customs Enforcement ("ICE"). *Id.* She was initially taken to Montgomery, Alabama for processing at an Enforcement and Removal Operations "Suboffice" and was then "transported to Pickens County Jail." Doc. 2-4.

Ms. Martinez filed her first habeas petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Alabama. Doc. 1 at 3; *see also* Doc. 2 at 4; Doc. 2-1. That petition was dismissed for lack of subject matter jurisdiction. Doc. 1 at 3; Doc. 2 at 4; Doc. 2-3. Ms. Martinez then filed a habeas petition in this court on January 29, 2026. Doc. 1. On the day Ms. Martinez filed her petition with this court, she was still detained in the Pickens County Detention Center in Carrollton, Alabama, within the Northern District of Alabama. *See id.* at 10; Doc. 2 at 3; 28 U.S.C. § 81(a)(5). She was transferred to an ICE facility in Louisiana the following day. Doc. 7 at 1.

On the same day she filed her habeas petition, Ms. Martinez filed an Emergency Motion for Temporary Restraining Order. Doc. 2. Ms. Martinez asks the court to:

> (1) preserve its jurisdiction by temporarily enjoining Respondents from removing [Ms. Martinez] from the United States or transferring her outside this District or changing her immediate custodian absent leave of Court, and (2) either temporarily release her from civil immigration custody or, in the alternative, require Respondents to provide her with a prompt, constitutionally adequate bond hearing under 8 U.S.C. § 1226(a), pending final disposition of the Petition.

2

*Id.* at 1. That motion is fully briefed. *See* Docs. 11, 13, 16.

Ms. Martinez also filed a Motion for Order to Show Cause, and for Production of Evidence on an Emergency Basis. Doc. 3. That motion seeks information and documents showing the basis for Ms. Martinez's detention. *See id.*

On February 18, 2026, the court held a hearing on Ms. Martinez's TRO motion. *See* Rough Transcript of February 18, 2026, Zoom Videoconference ("Tr.") at 1. Petitioner's counsel stated that Ms. Martinez remains detained at an ICE facility in Louisiana and has been there for approximately three weeks. *Id.* at 3–4. Petitioner's counsel confirmed that Ms. Martinez "recently filed through her attorney an application for something called Parole in Place[,] . . . but parole is not an admission." *Id.* at 6–7. Consistent with her prior submissions to this court, petitioner's counsel argued that Ms. Martinez is entitled to relief on both statutory and constitutional grounds. *See id.* at 4–10, 20–26. Consistent with their prior submissions to this court, respondents argued that Ms. Martinez's continued detention is mandated by statute and does not violate due process. *See id.* at 11–18.

## II.   LEGAL STANDARD

### A. Jurisdiction

District courts have authority to grant writs of habeas corpus, which may be issued to a petitioner who demonstrates that she is in custody in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2241(a), (c). "Habeas is

at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). A district court's authority to grant writs of habeas corpus extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

This court has jurisdiction here because Ms. Martinez was detained in the Northern District of Alabama at the time she filed her habeas petition. Doc. 1 at 10; Doc. 2 at 3. That Ms. Martinez has since been transferred outside the district does not divest the court of jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2024). The parties agree that the court has jurisdiction. *See* Doc. 7; Doc. 11 at 3 n.2.

### B. Temporary Restraining Order

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may enter a preliminary injunction or a temporary restraining order. *See* Fed. R. Civ. P. 65. To obtain either form of relief, a party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *accord Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011).

### III.   ANALYSIS

In support of her motion for a temporary restraining order, Ms. Martinez claims she is likely to prevail on her claim for habeas relief on both statutory and constitutional grounds. Both arguments are unavailing.

### A. Statutory Construction

The arguments before the court rest on competing interpretations of two immigration statutes, 8 U.S.C. §§ 1225 and 1226. Section 1225 expressly applies to "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). The statute provides that aliens who are not "entitled to be admitted . . . shall be detained" for removal proceedings. *Id.* § 1225(b)(2). Section 1226 applies to aliens "arrested and detained" "[o]n a warrant" and allows discretionary release of the alien on bond, subject to certain exceptions. *Id.* § 1226.

This case presents the question whether Section 1225 applies to longtime unlawful residents of the United States and authorizes the government to detain such persons without a bond hearing during removal proceedings, following their detention by ICE without a warrant. The Supreme Court has not decided that issue. It discussed Sections 1225 and 1226 in *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), but that case addressed a habeas petition by a lawful permanent resident, not a petition by a noncitizen unlawfully in the United States. *See id.* at 289–90.

5

Numerous district courts have recently addressed this issue. *See, e.g.,* Doc. 1 at 30–31; Doc. 1-2 (collecting cases). Only two United States Courts of Appeal—the Fifth Circuit and the Seventh Circuit—have addressed it so far. *See Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). Those Circuits came to different conclusions. Relying upon both "[t]he text and context of § 1225," the Fifth Circuit concluded:

> The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was passed in part out of a desire to equalize the treatment of noncitizens presenting at ports of entry for inspection and those apprehended in the interior after effecting an unlawful entry. It pursued this aim in several ways, most prominently in deeming both classes of noncitizens "applicants for admission" subject to the same removal procedures and excluding noncitizens detained based on certain criminal offenses from eligibility for bond.

*Buenrostro-Mendez*, 2026 WL 323330, at *4, *10. The Seventh Circuit held, in a "preliminary" conclusion "[b]ased upon the text and structure of" Sections 1225 and 1226, that government defendants were "not likely to succeed on the merits of their argument that [noncitizens], whom ICE arrested . . . without a warrant, are subject to mandatory detention under § 1225(b)(2)(A)." *Castañon-Nava*, 161 F.4th at 1061, 1064.

Ms. Martinez takes the position that even though she is seeking relief from removal, she is not an applicant for admission to the United States under Section

1225. Her counsel admits that "[a]t no point did" Ms. Martinez seek "lawful entry into the country after inspection and authorization by an immigration officer." Tr. at 22. Further, her counsel has explained, "She's not seeking that now. She's seeking relief from removal and she's seeking another discretionary parole benefit." *Id.* Put differently, Ms. Martinez argues that even though she has lived in the United States unlawfully for decades, and she is asking the government not to remove her, she is not an applicant for admission under Section 1225 because she made her request to stay under a different provision of federal immigration law.

The government takes the position that if Ms. Martinez wishes to stay in the United States, she is an applicant for admission under Section 1225. Put differently, the government says, "[e]ither [Ms. Martinez] is not seeking admission to the United States as far as not seeking lawful status or she is." *Id.* at 15. According to the government, because Ms. Martinez has lived in the United States unlawfully for decades and would like the government's permission to stay, she is necessarily an applicant for admission under Section 1225, regardless what form of relief from removal she seeks.

Ms. Martinez cannot so easily evade Section 1225. On her reasoning, federal law would afford more protection for persons who slip undetected across the border and remain unlawfully in the country for decades, than to persons who present themselves at the border and apply for legal protections. Nothing in the applicable

7

statutes supports this proposition, which defies common sense. As another district court in the Eleventh Circuit recently explained:

> [I]f aliens who evaded immigration authorities for some unspecified length of time ceased to be "applicants for admission" subject to section 1225's mandatory detention and removal scheme—but were instead subject to discretionary removal with the possibility of bond or parole under section 1226—then aliens would be incentivized to surreptitiously and unlawfully enter the country to obtain more robust rights than their counterparts who lawfully presented themselves for inspection.

*Morales v. Noem*, Case No. 25-62598-CIV-SINGHAL, 2026 WL 236307, at *7 (S.D. Fla. Jan. 29, 2026).

Having reviewed the relevant persuasive precedents, this Court analyzes the statutory interpretation question the same way the Fifth Circuit analyzed it in *Buenrostro-Mendez*. Although (as Ms. Martinez points out, *see* Doc. 22 at 2) the petitioners in that case conceded they were applicants for admission, that distinction is not relevant here because Ms. Martinez concedes the facts that support the court's finding that she is an applicant for admission under Section 1225 — namely, that she has not been admitted into the United States and that she would like to not be removed. Accordingly, the court concludes that under Section 1225, Congress has subjected Ms. Martinez to mandatory detention during her removal proceedings. Ms. Martinez is therefore unlikely to prevail on the merits of her argument that she has a right to release or to a bond hearing.

### B. Due Process

Ms. Martinez also asserts that "individual due process as applied to [her] requires release or a bond hearing." Tr. at 8. "So even if the Court found the *Buenrostro* reason[ing] to be persuasive then the Court could still grant a meaningful relief in terms of habeas." *Id.* at 9. Respondents assert "that detention remains [until] the culmination of immigration proceedings." *Id.* at 11. According to the government, because Ms. Martinez is "going through immigration proceedings[,] . . . she's going through the due process that Congress has afforded her." *Id.* The government argues that the Supreme Court "has been clear, when Congress speaks and provides process, especially in the immigration context, that is the process that is due to . . . aliens going through the immigration process." *Id.* at 12.

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976). "And, since *Mathews*, [the Supreme] Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). The Supreme Court has maintained a "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. "Petitioner's detention is part of the deportation process and therefore does not—absent some further

9

showing—amount to a deprivation of due process." *Morales*, 2026 WL 236307, at *9; *see also Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").

Under these binding Supreme Court precedents, an applicant for admission such as Ms. Martinez has no constitutional right to a bond hearing pending removal proceedings. She is entitled to the process that Congress has provided by statute, and the Supreme Court has held that that process is adequate due process. Ms. Martinez is thus not likely to succeed on the merits of her due process argument.

## IV.   CONCLUSION

For the reasons set forth above, Ms. Martinez is not likely to succeed on the merits of her requests for relief. She is thus not entitled to a temporary restraining order or preliminary injunction. Ms. Martinez's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction, Doc. 2, is **DENIED**. Because the court finds no basis for emergency relief, Ms. Martinez's Motion for Order to Show Cause, and for Production of Documents on an Emergency Basis, Doc. 3, is **DENIED AS MOOT**.

**DONE** and **ORDERED** this 25th day of February, 2026.

_____

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

10